SECURITIES AND EXCHANGE
COMMISSION, Applicant,

v.

BLINDER, ROBINSON & COMPANY,
INC., Respondent.

Misc. No. 87–0297.

United States District Court,
District of Columbia.

Nov. 25, 1987.

Thomas C. Newkirk, S.E.C., Washington,
D.C., for applicant.

Arthur F. Mathews, Wilmer, Cutler & Pickering, Washington, D.C., for respondent.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

The Securities and Exchange Commission (SEC or Commission) comes before the Court seeking enforcement of an administrative subpoena *duces tecum* against Blinder, Robinson & Co., a nationwide broker-dealer firm. Blinder, Robinson has partially complied with the SEC subpoena, but now refuses to release certain documents unless the Commission first pays it one-half the cost of duplicating the materials requested.

### I

As a threshold matter, Blinder, Robinson argues that the enforcement statutes of the Securities Exchange Act of 1934 (Act) violate the constitutional principle of separation of powers. This is so, it is said, because the SEC is an independent agency whose Commissioners can be removed only for cause by the President, it cannot exercise the core executive function of enforcing the laws of the United States. Therefore, according to Blinder, Robinson, the Commission cannot constitutionally petition the court directly for enforcement of its subpoena, but must request authorization from either the Department of Justice or some other representative of the executive branch. There is no merit to this argument.

There is no question that it is within the ambit of constitutionally delegated executive power to "take care that the Laws be faithfully executed." U.S. Const. Art. II, § 3. It is equally true, of course, that the executive branch may, as a vehicle for enforcing the law, engage in investigatory activities. But the Supreme Court has repeatedly recognized that the powers assigned to the three branches are not "hermetically" sealed from each other. *INS v. Chadha*, 462 U.S. 919, 951, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1982). There are many instances where the three branches are vested with concurrent powers, and the power to conduct investigations is one such instance. Just as the executive branch may investigate statutory violations, so may the judiciary conduct hearings into criminal or disciplinary misconduct and the Congress convene oversight hearings to investigate compliance with its laws. To the extent that Congress delegates to independent agencies the power to engage in activities within the ambit of the investigatory power, then, there is no encroachment on the constitutional bailiwick of another branch.

Blinder, Robinson would have the Court rule that only the executive branch may petition a federal court for enforcement of laws on behalf of the United States. But that is not the issue here which involves only the question whether the SEC had the authority to issue a particular administrative subpoena. The underlying goal of the subpoena is to collect sufficient information to proceed with a fraud investigation, not to initiate enforcement proceedings. If the investigation establishes that a violation has occurred, enforcement may well follow. But the immediate action requested does not relate to that future, speculative event, and there is no need to resolve the question whether Congress could properly delegate the power to request subpoena enforcement under those circumstances.

The answer to the narrow question whether Congress may properly delegate power to petition the courts directly for enforcement of a subpoena issued in the context of an investigation is clearly in the affirmative. The congressional grant of investigatory power to the SEC, and the concomitant power to request enforcement of its subpoenas, are well within the scope of a proper delegation of constitutional authority. In vesting this authority with the Commission, Congress has determined that the power to seek judicial enforcement of its orders is crucial to the effective administration of agency responsibilities. *See FTC v. Dean Foods Co.*, 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966). Pursuant to that delegation the SEC is free to

petition the Court for enforcement of its administrative subpoenas, following procedures carefully mapped out by statute.

The cases cited by Blinder, Robinson in which a violation of the separation of powers doctrine was found are inapposite to the instant question. In reaching its conclusion in cases such as *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), *Chadha*, and *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), the Supreme Court did not cast doubt on the legality of the independent agencies as such, or on their ability to engage in activities traditionally within their domain.

This is not a situation, as in *Chadha*, where legislative control is asserted over an executive prerogative. Nothing in *Chadha* indicates that Congress could not, pursuant to its powers to control the trading of stocks and bonds in interstate commerce, delegate the power to suspend violators to an independent agency whose members were removable by the President for cause. Allowing an independent agency to investigate potential violations of a statute is hardly the equivalent of taking constitutional power away from the tripartite system and creating, as defendants would characterize it, a "headless 'fourth branch' of government." It is merely a delegation of investigative powers, which the independent regulatory agencies have had and have exercised for almost a hundred years, and which do not impact on the core executive function of law enforcement. It is not surprising therefore that, as Blinder, Robinson recognizes, both appellate courts and district courts have in recent years rejected challenges similar to that mounted here. *See ICC v. Chatsworth Cooperative Marketing Assn.*, 347 F.2d 821 (7th Cir.1965); *FTC v. American Nat'l Cellular, Inc.*, 810 F.2d 1511 (9th Cir.1987); *SEC v. Blinder, Robinson*, C.A. No. 80–M–1125 (D.Col. July 29, 1986); *SEC v. Thomas*, No. 86–C–0313G (D.Utah Oct. 14, 1986); *SEC v. Engage-A-Car Service, Inc.*, No. 86–3758 (D.N.J. Dec. 18, 1986) [Available on WESTLAW, 1986 WL 15066]; *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984); and *Humphrey's Executor v. United States*, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935). Blinder, Robinson's reliance on law review articles, concurring opinions, and currently fashionable speculation is not adequate to overcome long-standing administrative practice sustained again and again by the courts.

## II

Blinder, Robinson also objects to the SEC's request for documents, arguing that the SEC Formal Order of Investigation pursuant to which the subpoena was issued is in excess of statutory authorization, constitutes an unlawful delegation of investigatory power by the SEC to its enforcement staff, and is a general administrative warrant in violation of the fourth amendment. These objections arise from a characterization of the Formal Order as unduly vague and broad.

There is a fatal flaw to this argument, however. The resolution of this matter does not require the Court to determine the validity, vagueness, or overbreadth of the Formal Order, as it is not that document which defines the scope of the SEC's request. The heart of the question involves a review of the subpoena itself. Under challenge is the SEC's actual request for production of documents as outlined by the terms of its subpoena, not a hypothetical request which could possibly be made under the broader, less tailored terms of the Order. For that reason, the inquiry in this matter must be limited to the breadth and specificity of the subpoena itself.

The SEC is statutorily authorized to "make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate" the provisions of the federal securities laws or "the rules or regulations thereunder ..." Securities Exchange Act of 1934, § 21(a), 15 U.S.C. § 78u(a) (1976). For that purpose, "any member of the Commission or any officer designated by it is empowered to ... require the production of any books, papers, correspondence, memoranda, or other records which the

Commission deems relevant or material to the inquiry." *Id.*, § 21(b), 15 U.S.C. § 78u(b). In the event of disobedience, the Commission may petition the court to exact compliance. *Id.*, § 21(c), 15 U.S.C. § 78u(c). It is pursuant to that authority that the SEC petitions for judicial enforcement of its subpoena *duces tecum*.

■ The standard for determining whether a federal regulatory agency has exceeded the scope of its investigatory powers is clear—it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368–69, 94 L.Ed. 401 (1950). Here, the SEC has requested information relating to transactions undertaken by Blinder, Robinson during a discrete time period and involving sixteen specific issuers suspected of fraud. The request is limited to documents which must be kept on file pursuant to SEC rule 17a–3, and that request sets out in detail which of those records are to be produced. As the SEC is charged with overseeing the securities industry and preventing fraud in the trading of stocks and bonds, it is well within the scope of its authority to request information necessary to dispel or confirm suspicions of which they have substantive evidence.

By the same token, the information sought is reasonably relevant to the inquiry—in fact it goes directly to the heart of the issue in question. Because the investigation is broad the subpoena's production effort is broad, yet it is no broader. The Commission has established prima facie evidence of its potential importance in terms of the investigative objectives. That level of justification is sufficient to validate the scope of the request and the Court therefore finds that the information sought is not clearly irrelevant or immaterial.

Finally, there is the crux of Blinder, Robinson's objection—that the demand for information is indefinite, and therefore vests in the staff member seeking to enforce the subpoena the power to determine the scope of the request, in violation of the Fourth Amendment. A review of the terms of the subpoena shows quite clearly that this objection cannot be sustained. Blinder, Robinson is directed to produce certain information about transactions completed after August 9, 1983 relating to the securities of sixteen companies. The requested information is carefully categorized and the limits of the requested production are clearly delineated; only those documents pertaining to the announced investigation must be surrendered. The fact that the subpoena requests virtually every piece of information in Blinder, Robinson's possession regarding the subject issuers does not change the fact that the request is specific and reasonably related to the inquiry. In fact, since maintenance of the requested records is mandated by the statute which the SEC seeks to enforce, it is quite logical that it would be those documents which would be requested in a proceeding investigating compliance.

Blinder, Robinson's objections to the constitutional and statutory validity of the subpoena must be rejected as meritless, as the request is within the SEC's statutory authority, the information is reasonably definite, and not clearly irrelevant to a properly justified investigation.

### III

Blinder, Robinson's final argument is that even if the documents are properly recoverable under the subpoena as issued, it should not be required to bear the entire expense of production. Rather, it contends that the SEC has a duty to prevent the investigation from unduly burdening Blinder, Robinson and to share in the costs if the investigation cannot be reasonably confined.

There is a continuing general duty to respond to governmental process, and parties will be required to absorb the reasonable costs of so doing. *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1033 (D.C.Cir. 1978), *cert. denied*, 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979). Although it is within the discretion of the Court to order the SEC to provide reimbursement for the costs of compliance with its subpoena, such

an order will not issue unless "the financial burden of compliance exceeds that which the party ought to reasonably made to shoulder." *Id.*

■ Blinder, Robinson submits that compliance with the subpoena required the duplication of microfiche records, the cost of which was in the amount of $14,800. It contends that this cost was unreasonable because the information contained on microfiche was largely duplicative of that contained on computer tapes, a copy of which had already been delivered to the SEC staff. In fact, argues Blinder, Robinson, the production of microfiche is necessary at this time only because of the SEC's earlier refusal to accept the most efficient means of producing the records requested.[1] Consequently, it refuses to produce the copied microfiche records until the SEC provides reimbursement of $7,400, or one-half of duplication costs.

In a situation where the SEC had required the reproduction of requested records, these arguments might be sufficient to support an order granting reimbursement of costs. In this instance, however, the Court is not persuaded that there was any need to reproduce the microfiche at all in order to comply with the SEC's demands. Certainly the SEC required nothing more than that the information requested be delivered for its review—it never specified that a copy, new or pre-existent, was required. Blinder, Robinson does not dispute that at the time of the original request it had within its possession an original and a copy of its microfiche records. *See* Declaration of John J. Cox at 7. One copy is maintained in the firm's vault for security purposes and the other is maintained for day-to day retrieval and research purposes. That the company chose to make an additional copy for delivery to the SEC rather than surrendering one of the two it already possessed is of no consequence. The simplest method of compliance with the SEC's request would have been to produce one of the existing sets of microfiche.[2] At the very least, Blinder, Robinson had an affirmative duty to explore that possibility with the SEC prior to acting unilaterally in having the microfiche copied.

The Court finds that it was only due to Blinder, Robinson's preference in submitting a new copy of the microfiche records rather that the copy already available that any expenditure was necessitated. If the costs associated with compliance with the subpoena *duces tecum* in question are unreasonable, they are unreasonably only because Blinder, Robinson chose to pursue an unreasonable avenue of compliance. Com-

---

1. According to Blinder, Robinson, it initially offered to produce a copy of either the computer tapes or the microfiche, each of which contained a good deal of the information requested. The SEC staff requested the tapes even though Blinder, Robinson made it clear that they were not as comprehensive as the microfiche. A copy of the tapes was provided to the SEC without a request for reimbursement. Subsequently, the SEC determined that it needed to review the microfiche as well, and made its further request for production. It is the expense of copying that microfiche which is in question.

   Blinder, Robinson maintains that had the SEC chosen to accept the microfiche in the first place, this issue would not have arisen. The matter is confused, however, by Blinder, Robinson's representations to the SEC in May of 1987 that it would absorb the cost of reproducing the microfiche so long as it did not exceed $20,000. There appears to have been some misunderstanding as to whether this offer was to hold if the SEC chose to review both forms of record keeping. For purposes of determining whether the cost of producing the microfiche was unrea-

sonable, however, the Court finds this factual dispute to be irrelevant.

2. Blinder, Robinson represents that it cannot give the original "vault" copy of the microfiche to the SEC because it is needed to provide backup for the working copy, thereby ensuring the accuracy and sufficiency of records as required by SEC Rules 17a–3 and 4. The Court understands the purpose of maintaining backup copies of records, but fails to understand why the backup will be any less useful for this purpose in the hands of the SEC than in the company's vault. Unless Blinder, Robinson means to suggest that the SEC would intentionally alter or damage the set of records entrusted to it, there appears to be no harm in allowing the SEC to use it for data retrieval. In the event that the SEC were to damage or lose the microfiche (as Blinder, Robinson suggests has occurred in the past), the agency's negligence would be a strong defense in an action accusing the company of recordkeeping violations involving the subject microfiche.

pliance could have been achieved just as satisfactorily without additional cost, and the Court will not hold the SEC liable for expenditures neither requested nor required. Therefore, the SEC is not required to reimburse Blinder, Robinson for any portion of the costs incurred to date for compliance with the subpoena.

For the above reasons, it is hereby this 24th day of November, 1987

ORDERED that the Commission's Application for Order Directing Compliance with the Subpoena *Duces Tecum* dated May 5, 1987, Returnable May 27, 1987, be and it hereby is granted; and it is further

ORDERED that Blinder, Robinson & Co., Inc., shall comply fully with the subpoena *duces tecum* issued to it by the Commission and produce documents at the offices of the Commission, 450 Fifth Street, N.W., on or before December 7, 1987.